**FILED**
**U.S. District Court**
**District of Kansas**
11/24/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NIDAL MALIK HASAN, )
 )
Petitioner, )
 )
 ) CASE NO. 26-3460-AWM
 )
COLONEL ANDREW SERGENT, )
Commandant, United States Disciplinary )
Barracks, Fort Leavenworth, Kansas, )
 )
Respondent. )

**MOTION FOR STAY OF EXECUTION IN ORDER TO PURSUE HABEAS CORPUS RELIEF BY A PERSON UNDER A DEATH SENTENCE**

Comes now Nidal Malik Hasan[1] and notifies this Court that he intends to file a petition for writ of habeas corpus under 28 U.S.C. § 2241 *et seq.* Pursuant to 18 U.S.C. §§ 3006A(a)(2)(B) and 3599, 28 U.S.C. § 1651, *McFarland v. Scott*, 512 U.S. 849 (1994), and D. Kan. R. 7.1 and 7.2, Hasan appears with standby counsel and seeks an Order staying his execution – which will otherwise be carried out by firing squad at Fort Hood, Texas on **December 3, 2026**. Ex. 1 (Execution Order). In support of this motion, Hasan states as follows:

**Procedural History**

1. Hasan is a death-sentenced prisoner in the custody of Respondent in the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas.

[1] Dismissed November 20, 2026. *See* Exhibit 2.

2. Hasan was born in the United States to parents who immigrated from Palestine.[2] He is an Arab American.[3] He is also a Muslim.[4]

3. On November 5, 2009, Hasan, an Army psychiatrist, was apprehended outside the Soldier Readiness Processing (SRP) center at Fort Hood, Texas, after opening fire with a semiautomatic handgun inside the SRP, killing 13 people and wounding 32 others. He was confronted outside the center and shot by law enforcement, rendering him paralyzed from the chest down and permanently confined to a wheelchair.[5] *United States v. Hasan*, 84 M.J. 181, 193 (C.A.A.F. 2024).

4. During his general court-martial proceedings in August 2013, Hasan relieved counsel and chose to proceed *pro se*. His intended *pro se* defense – precluded by the trial judge – was that his actions were legally justifiable because he was defending the Afghan Taliban, who are trying to establish Islam as Supreme Law of their land, from an unlawful attack by the United States Army – in short, "defense of others," or as Hasan sometimes referred to it, "defense of thirds."[6] *Id.* at 242. After his defense was precluded, Hasan was "largely silent throughout the

---

[2] Tom Gjelten, *Hasan's Story Won't Be Easy to Sort Out*, NPR (Nov. 6, 2009), https://www.npr.org/2009/11/06/120183526/hasans-story-wont-be-easy-to-sort-out.

[3] Institute for Middle East Understanding, *Who Are the Palestinians?*, IMEU (Dec. 15, 2005), https://imeu.org/resources/resources/who-are-the-palestinians/336.

[4] Gjelten, *supra*, note 1.

[5] Victoria Craw, *Who Is Nidal Hasan, the Former Army Major Whose Execution Is Set to Be Live-Streamed?*, Wash. Post (Oct. 9, 2026), https://www.washingtonpost.com/national-security/2026/10/09/who-is-nidal-hasan-former-army-major-whose-execution-is-set-be-live-streamed/.

[6] Manny Fernandez, *Judge Rejects Fort Hood Shooting Suspect's Defense Strategy*, N.Y. Times (Jun. 14, 2013), https://www.nytimes.com/2013/06/15/us/judge-rejects-fort-hood-shooting-suspects-defense-strategy.html.

proceedings."[7] He offered an opening statement admitting that he was the shooter and presenting himself as part of the "mujahideen" – or Islamic fighters – against the United States military's operations in Afghanistan.[8] After a trial that lasted eleven days and featured 90 government witnesses, only three of whom were cross-examined in any manner, Hasan was convicted of thirteen specifications of premeditated murder and thirty-two specifications of attempted premeditated murder in violation of Uniform Code of Military Justice (U.C.M.J.) Articles 118 and 80, 10 U.S.C. § 918 and 880, respectively. After four days of unrebutted evidence in aggravation and no defense evidence or argument in mitigation, the panel sentenced him to death, dismissal from the service, and forfeiture of all pay and allowances. *Hasan*, 84 M.J. at 193-94.

---

> Days after the Army major charged in the Fort Hood shooting rampage here in 2009 argued that he had carried out the attack to protect Taliban leaders from American soldiers, a military judge effectively tossed out his defense, ruling on Friday that the claim had no legal merit.
>
> Last week, Maj. Nidal Malik Hasan told the judge he was protecting Taliban leaders in Afghanistan from danger when he opened fire at the base on Nov. 5, 2009, killing 13 people. In describing his new defense – known in legal terms as a "defense of others" – he said he was defending the lives of Taliban leaders, including Mullah Muhammad Omar, the group's founder, from Fort Hood soldiers deploying to Afghanistan.

*Id. See* Ex. 5 (A version of Hasan's *pro se* filing submitted during his direct appeal and approval process) (filed provisionally under seal). As addressed below, Hasan intends to raise this issue in his habeas petition. An updated version will be provided to the court once it is provided by personnel at the Disciplinary Barracks to standby counsel.

[7] Kate McGee, *Jury Deliberating in Fort Hood Shooting Trial*, Tex. Pub. Radio (Aug. 22, 2013), https://www.tpr.org/texas/2013-08-22/jury-deliberating-in-fort-hood-shooting-trial.

[8] *Defendant in Fort Hood Shooting Case Admits Being Gunman*, N.Y. Times (Aug. 6, 2013), https://www.nytimes.com/2013/08/07/us/court-martial-begins-in-fort-hood-killings.html. "Mujahideen" is – generally speaking – a group of Islamic fighters who engage in "jihad," which is a struggle or effort on behalf of Allah or Muslims generally. *Mujahideen*, Wikipedia, https://en.wikipedia.org/wiki/Mujahideen (last visited Sept. 28, 2026).

5. Hasan, through detailed military counsel, appealed to the United States Army Court of Criminal Appeals,[9] which denied relief on December 11, 2020. *United States v. Hasan*, 80 M.J. 682 (A. Ct. Crim. App. 2020). He then appealed to the United States Court of Appeals for the Armed Forces (C.A.A.F.),[10] and was denied relief on March 4, 2024. *United States v. Hasan*, 84 M.J. 181 (C.A.A.F. 2024). The Supreme Court of the United States denied a petition for writ of certiorari on March 31, 2025.[11] *Hasan v. United States*, 145 S. Ct. 1470 (2025).

6. After this direct appeal process, the final stage of military proceedings in capital cases is Presidential review of the death sentence. U.C.M.J. art. 57(a)(3), 10 U.S.C. § 857(a)(3); U.S. Dep't of the Army, Reg. 190-55, U.S. Army Corrections System: Procedures for Military Executions, para. 1-4 (rev. Oct. 30, 2023) [hereinafter AR 190-55],[12] where Hasan submitted as his only submission "Man's Duty to the Creator and Purpose of Life."[13] The Acting Secretary of the Army (SECARMY), pursuant to AR 195-55, paras. 1-4(a)(2)-(4) and 1-4(d)(3), issued the execution order on October 6, 2026, setting Hasan's execution by firing squad for Thursday, December 3, 2026, at 1:00 p.m. (CST) at Fort Hood, Texas. Ex. 1 (Execution Order).

---

[9] U.C.M.J. art. 66, 10 U.S.C. § 866.

[10] U.C.M.J. art. 67, 10 U.S.C. § 867.

[11] 28 U.S.C. § 1259.

[12] Available at https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN39031-AR_190-55-000-WEB-1.pdf.

[13] *See* Exhibit 5.

**Notice that Hasan Intends to Petition for a Writ of Habeas Corpus**

7. Hasan intends to file a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241 *et seq.*[14] In that petition, as set forth below, Hasan intends to demonstrate that the military court's judgment and his resulting sentence of death were obtained and are maintained in violation of his federal constitutional and statutory rights.

8. Death-sentenced prisoners are "entitled to one fair opportunity to seek federal habeas relief." *Banister v. Davis*, 590 U.S. 504, 507 (2020); *see also Martel v. Clair*, 565 U.S. 648, 659 (2012) (18 U.S.C. § 3599 provides "enhanced rights of representation" that "[h]abeas petitioners facing execution now receive . . . as a matter of right, not an exercise of the court's discretion"); *McFarland v. Scott*, 512 U.S. 849, 859 (1994) ("federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty").

**Notice that Hasan Intends to Proceed *Pro Se***

9. Hasan intends to proceed *pro se* in his habeas corpus proceedings.

10. In addition to detailed military counsel, Hasan has had the opportunity to consult with qualified habeas counsel with the Capital Habeas Unit for the Fourth Circuit (the CHU), which is a part of the Federal Public Defender's Office for the Western District of North Carolina,

---

[14] U.S. Dep't of the Army, Reg. 27-10, Military Justice (rev. May 8, 2025) [hereinafter AR 27-10], https://www.jagcnet.army.mil/Home/assets/pdf/trial-judiciary/AR%2027-10,%20Military%20Justice,%20eff%208%20Jan%202025,%20rev%208%20May%202025.pdf., acknowledges that death-sentenced service members have the right to seek federal habeas review and presupposes the appointment of civilian counsel in federal habeas corpus proceedings. AR 27-10, para. 12-14. Note, as discussed below, however, that Hasan is appearing with the assistance of standby counsel only.

and more recently counsel from the American Civil Liberties Union Capital Punishment Project (CPP). Hasan was assisted in drafting this motion by attorneys from the CHU.

11. As a result, Hasan is aware that he is entitled to seek appointment of counsel, pursuant to 18 U.S.C. § 3006A(a)(2)(B), which provides for appointment when "the interests of justice so require" to a party seeking relief under 28 U.S.C. § 2241. Such an appointment is consistent with this Court's prior appointments in similarly situated military death penalty cases. *Hennis v. Curtis*, No. 5:25-cv-03207-DDC, ECF No. 3 at 2 (D. Kan. Oct. 7, 2025); *see also Gray v. Gray*, No. 5:08-cv-03289-JTM, ECF No. 7 at 2-3 (D. Kan. Nov. 26, 2008) (analyzing 21 U.S.C. § 848(q)(4)(B), the statutory predecessor to 18 U.S.C. § 3599). The provisions governing such appointments entitle a defendant "seeking to vacate or set aside a death sentence . . . to the appointment of one or more attorneys" who meet a certain experience threshold and "the furnishing of" expert, investigative, and other reasonably necessary services. 18 U.S.C. § 3599(a)(2). The Supreme Court of the United States has also recognized the right to qualified counsel given "the seriousness of the penalty and . . . the unique and complex nature of the litigation." *McFarland*, 512 U.S. at 855; *see also Martel,* 565 U.S. at 659 (the intent of § 3599 was to provide "enhanced rights of representation" to "[h]abeas petitioners facing execution").

12. In *McFarland*, the Supreme Court established "that the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition." *McFarland*, 512 U.S. at 855. The Court reasoned that, given the complexity and serious implications of a writ of habeas corpus, a defendant facing the death penalty has "a right to legal assistance in preparation of a habeas corpus application." *Id*. at 856.

13. Hasan is also aware that while there is no federal constitutional right to self-representation in federal habeas proceedings, 28 U.S.C. § 1654 likely provides a statutory right to

*pro se* representation in all federal court proceedings.[15] And of course, most federal habeas petitions are filed without the assistance of counsel.[16]

14. When *pro se* representation is allowed, courts are still free to permit standby counsel to assist the *pro se* litigant or "to steer a defendant through the basic procedures," and may do so – "even over the defendant's objection – to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984).

15. A district court's discretion to grant a petitioner's request to proceed *pro se* is subject to two important caveats. First, that discretion is limited to circumstances where the waiver of the statutory right to counsel is knowing and voluntary. Even at trial where the Sixth Amendment right to self-representation exists, "the right of self-representation is not absolute." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). To represent himself, the defendant must "voluntarily and intelligently" waive the right to counsel, and he must be "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *Mackovich*, 209 F.3d at 1236; *United States v. Hansen*, 929 F.3d 1238 (10th Cir. 2019).[17] It follows that a federal district court has discretion to grant a habeas petitioner's

---

[15] *See United States v. Mackovich*, 209 F.3d 1227 (10th Cir. 2000). Although that provision was enacted in 1948, it has never been interpreted as granting a right to *pro se* representation in habeas proceedings.

[16] *See, e.g., Duncan v. Walker*, 533 U.S. 167, 191 (2001) (Breyer, J., dissenting) (at least "93%" of habeas petitions are filed *pro se*).

[17] This is consistent with the concern expressed by the Supreme Court long ago:

> Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a

request to proceed *pro se* only when that decision is made "voluntarily and intelligently" and only after petitioner is advised of the "dangers and disadvantages of self-representation." *Id*. Second, a federal district court must also deny a request for self-representation if a petitioner is not competent to represent himself. *Edwards*, 554 U.S. at 175-78; *see also Wiseman*, 629 F. Supp. at 490 (Before allowing a federal habeas petitioner to dismiss counsel, a court must "determine if [the petitioner] is competent to represent himself.").

16. Again, aware of these procedures, Hasan requests that he be permitted to proceed *pro se* in habeas proceedings.

17. Hasan does, however, agree to CPP attorneys representing him in a standby role. *See, e.g.,* ABA Standards for Criminal Justice: *Special Functions of the Trial Judge*, Standard 6-3.7(a) Standby Counsel for *Pro Se* Defendant (3d ed. 2000) [hereinafter "ABA Standard for Trial Judges"] (Standby counsel "should always be appointed in capital cases."). Likewise, Hasan is willing and agreeable to continued assistance by detailed military counsel.

**Motion for a Stay of Execution**

18. Pursuant to 28 U.S.C. §§ 1651 and 2241, 18 U.S.C. §§ 3006(2)(B) and 3599, *McFarland v. Scott*, 512 U.S. 849 (1994), 512 U.S. 849 (1994), *Hennis v. Curtis*, No. 5:25-cv-03207-DDC, ECF No. 3 (D. Kan. Oct. 7, 2025), and *Gray v. Gray*, No. 5:08-cv-03289-JTM, ECF

---

> witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that "a lawyer who represents himself has a fool for a client" is the product of years of experience by seasoned litigators.

*Kay v. Erhler*, 499 U.S. 432, 437-38 (1991).

No. 7 at 2-3 (D. Kan., Nov. 26, 2008) (analyzing 21 U.S.C. § 848(q)(4)(B), the statutory predecessor to 18 U.S.C. § 3599), Hasan also moves this Court to enter an order staying his execution scheduled for December 3, 2026, to safeguard his right to pursue federal habeas corpus relief. He is entitled to a stay to provide him and standby counsel with sufficient opportunity to investigate, prepare, and present his habeas petition. *McFarland*, 512 U.S. at 858 (once a capital defendant invokes his right to the assistance of appointed counsel or standby counsel, a federal court also has jurisdiction to enter a stay of execution).

> [T]he right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."

*Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983)). Likewise, this Court has held that a military capital habeas petitioner who intends to file a habeas petition is entitled to the assistance of counsel and a stay in order to pursue habeas relief. *Gray v. Gray*, No. 5:08-cv-03289-JTM, ECF No. 7 at 2-3 (D. Kan. Nov. 26, 2008) (analyzing 21 U.S.C. § 848(q)(4)(B), the statutory predecessor to 18 U.S.C. § 3599)[18] *and* ECF No. 15 at n.1 (Dec. 19, 2008) ("Although the appointment of counsel under 18 U.S.C. § 3599(a)(2), and the stay authorized by 28 U.S.C. § 2251 as interpreted by *McFarland*, do not explicitly address a capital defendant seeking federal habeas corpus relief under § 2241 rather than § 2254 or § 2255, the court's appointment of counsel and entry of a comparable equitable stay in this case is informed by the same underlying constitutional concerns.").

[18] *See also* 28 U.S.C. § 2251(a)(1) (allowing the District Court to stay state court proceedings pending resolution of habeas petitions by state prisoners under 28 U.S.C. § 2254).

19. Even without the assistance of qualified habeas counsel,[19] Hasan has already identified at least two constitutional issues that he will present in his habeas petition before this Court. *See* Exhibit 4 (Constitutional Violations for Inclusion in the Habeas Petition). Hasan reserves the right to identify, prepare, and present additional issues once a stay of execution is granted and standby counsel has sufficient opportunity to investigate and research potential claims in order assist him.

[19] While Hasan has detailed military counsel, he is not qualified in federal habeas litigation. Likewise, while Hasan has been assisted by qualified counsel at the Fourth Circuit CHU in drafting this motion, those counsel have had no prior connection to the case or proceedings.

**Conclusion**

WHEREFORE, for the foregoing reasons, Hasan moves this Court for a stay of the execution scheduled for December 3, 2026.

Respectfully submitted,

Nidal M Hasan 3 Sort SOA

Nidal Malik Hasan

November 24, 2026.

**CERTIFICATE OF SERVICE**

I certify that I filed, through standby counsel, the foregoing motion with the Clerk of Court using the CM/ECF system and have served notice by email on the United States Attorney for the District of Kansas; as well as general counsel for the Commandant, USDB.

November 24, 2026.

*/s/ Marisa A. O'Gara*

Marisa A. O'Gara, #31105
ACLU Foundation of Kansas
PO Box 13048
Overland Park, KS 66282
mogara@aclukansas.org
Ph. 913-490-4100
Fax: 913-490-4119